# CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Commonwealth of Virginia

v.

Mildred Brown Queen, Adm'x, et al.

## May 5, 1978

By JUDGE JOHN A. JAMISON

This suit was instituted by the Escheator for the City of Fredericksburg pursuant to Section 55-197 et seq. of the Code of Virginia, to recover for the Commonwealth the net estate of Carrie M. Golden who died on June 5, 1975, unmarried, intestate, without issue and allegedly without heirs or distributees.

An answer to the Escheator's suit was filed by William Lawson, surviving brother of John Lawson, who was found from the evidence by the Commissioner to have been the biological but illegitimate father of the said Carrie M. Golden, deceased. William Lawson has died during the pendency of this action. His lineal descendants have continued to participate as respondents herein, without objection, although no substitution has been made pursuant to Rule 2:16 of the Rules of Court.

David H. Beck was appointed guardian ad litem for "parties unknown" and he has filed an answer on their behalf. Farmers and Merchants State Bank, depository of most of the funds of the estate, has also filed an answer.

In his report, the Commissioner has found that the evidence clearly establishes the various family relationships of Carrie M. Golden, her marital status, parentage, deaths of her siblings and lack of lineal descendants.

The question becomes one of whether or not William Lawson, and now his heirs and distributees, are entitled through William's brother, John, biological parent of

Carrie Golden, to the latter's estate. The Commissioner's finding that John Lawson was the decedent's biological father is borne out by the evidence which appears fully to justify such finding for the many reasons set out in the report. Therefore, the Commissioner's finding that Carrie M. Golden was born out of wedlock, the illegitimate child of Martha Golden and John Lawson, should not be disturbed. Indeed, the Escheator does not make this finding of the Commissioner one of his exceptions. He does except to the Commissioner's finding that Virginia Code Section 64.1-5 is unconstitutional in light of the holding by the United States Supreme Court in *Trimble* v. *Gordon*, 430 U.S. 767, 52 L.Ed.2d 31 (1977).

The report of the Commissioner, Mr. Ledbetter, is well reasoned and even logical in its projection of the results of *Trimble* v. *Gordon* to the fact situation in the case at bar. He states that although it is a well settled rule that a State may classify persons and objects for the purpose of legislation, and pass statutes applicable only to persons or objects within a designated class, it is equally well settled that such a classification to satisfy the equal protection guaranties of the Fourteenth Amendment, must rest upon material, meaningful and rational differences between the persons or things included in the classification and excluded from it. In essence, a state may not draw a line which constitutes an invidious discrimination against a particular class. He goes on to cite cases from the United States Supreme Court in which that court invalidated several states' statutes which deny the right of illegitimate children to inherit. The Virginia statute does not deny the right of an illegitimate child to inherit from its mother. Indeed our Code Section 61.1-5 specifically directs the passage of inheritance to avoid the loss by an illegitimate mother or her child of the other's property. Nationwide, however, the matter of intestate inheritance by or from an illegitimate person through either the mother or father has been somewhat confused until *Trimble* v. *Gordon, supra.*

At issue in *Trimble* was the constitutionality of the section of the Illinois Probate Act which is almost identical to Virginia Code Section 61.1-5. It allowed illegitimate children to inherit by intestate succession only from their mothers. *Trimble* does not touch upon degrees of kinship other than a direct one, such as parent or child. In that case, the claim of the illegitimate

child to her father's estate was rejected although if she had been a legitimate child, she would have inherited his entire estate. The United States Supreme Court held that the statutory discrimination against illegitimate *children* is unconstitutional. The Commissioner here holds that "on the basis of Trimble, there can be no doubt but that Virginia Code Section 64.1-5 does not meet the command of the equal protection clause of the Fourteenth Amendment and is thereby unconstitutionally infirm."

I would certainly agree with this holding if John Lawson in this case, himself, were alive to inherit his illegitimate daughter's estate or to be distributee of her personalty; or if it were a case of Carrie Golden still being alive to inherit from her illegitimate father, John Lawson. The question is, are the heirs and distributees of William Lawson, himself the deceased brother of the deceased father of the illegitimate child, too remote a class to inherit from Carrie Golden? Must there not be a stopping point or a degree of consanguinity beyond which the inheritance cannot flow?

The Court of Appeals of the State of New York, presumably the court of last resort of that state, has written a very persuasive opinion, *V. J. F. Buck* v. *Florence S. W. Hunter et al.*, [44 N.Y.2d 137, 375 N.E.2d 735, 404 N.Y.S.2d 554 (1978)], decided during April, 1978, and as yet unpublished, which is the first known state response to *Trimble*.

The appellant, V. J. F. Buck, an issue of John Fay, the biological but unmarried father of the decedent, claimed to be a distributee of the decedent by reason of being the child of a common father.

After considering appellant's claim, the Surrogate Court of New York sustained the objections of the Respondents who claimed through the mother's blood line and dismissed the objections of the appellant Buck who claimed the relationship by reason of a common father. The appellate division of the New York Supreme Court system unanimously affirmed. New York law, in a proper proceeding, allows for an order of filiation which can be obtained under certain circumstances to establish parentage. The New York State order of filiation, declaring the decedent's father to be John Fay, and also the father of the appellant by another mother, was never made. Seeing no New York conflict with *Trimble* in the Fay case, the court said:

We are not concerned with a natural child claiming to be a distributee from his father, nor a situation where a putative father makes a claim against his illegitimate child, but rather a situation where another individual who claims to be a half-sister of a decedent through a common father seeks a share in the illegitimate's estate.

Appellant challenges, however, the facial constitutionality of the preclusion of inheritance by paternal kindred of an illegitimate, other than a father, irrespective of the existence of an order of filiation. [a New York proceeding somewhat akin to bastardy actions in some states, to establish male parentage.] . . . We hold that the preclusion of inheritance by the paternal kindred of an illegitimate. . . is not violative of equal protection. . . It should not be overlooked that this exclusion is not directed at the illegitimate. It is not a punishment for the conduct of his or her parents. Nor are individuals related to the illegitimate decedent denied inheritance on the basis of their sex. It is merely a legislative judgment designed to ensure that only the true members of an illegitimate's family are permitted to share in his or her estate. In addition, it serves a legitimate purpose in providing for the orderly settlement of estates and the dependability of title to property passing under our laws of intestate distribution. We thus find no constitutional infirmity in precluding inheritance by the paternal kindred of an illegitimate.

Of course, this New York case is not binding on Virginia courts. However, it is well considered and highly persuasive. It distinguishes the New York statute, which effectuates the same result as Virginia's, by saying that *Trimble v. Gordon* does not apply except in the more direct situation where the father inherits from his illegitimate child or vice versa. Thus the degree of consanguinity or kindred is important and the Commissioner's projection of inheritance to far removed cousins, collateral

or distant generations, does not result in unconstitutional discrimination.

The Commission having found, therefore, that Carrie Golden did in fact die unmarried, intestate and without issue, heirs or distributees, it would appear to entitle the Commonwealth to her estate. Accordingly, the Commissioner's holding to the contrary will be overruled, and the personal estate of Carrie Golden, which it is understood is her only estate, will be ordered escheated to the Commonwealth of Virginia.